WILY HUNT v. GUS GILLERMAN IRON & METAL COMPANY, Appellant. —39 S. W. (2d) 369.

Division One, May 21, 1931.

*Wilbur C. Schwartz* for appellant.

*Everett J. Hullverson, Mark D. Eagleton* and *James A. Waechter* for respondent.

FRANK, J.—Plaintiff, respondent here, sought by this action to recover the sum of $15,000 for alleged personal injuries. The trial resulted in a verdict for plaintiff for $1,000. On motion of plaintiff, this verdict was set aside and a new trial granted. Defendant appealed from the order granting a new trial.

The trial court assigned of record two grounds for granting a new trial, the first of which was that the verdict was so inadequate as to indicate bias and prejudice on the part of the jury. To say that the verdict is inadequate is equivalent to saying that it is against the weight of the evidence. [City of St. Louis v. Franklin, 324 Mo. 1212, 26 S. W. (2d) 954.] So we will treat the new trial as having been granted on the ground that the verdict was against the weight of the evidence.

Appellant's first contention is that the trial court erred in granting a new trial on this ground. The law applicable to this contention has been definitely settled by former decisions of this court. In State ex rel. v. Ellison, 268 Mo. 225, 231, 188 S. W. 1076, we said:

"I. Our statute (Sec. 2022, R. S. 1909), and the decisions of all of the appellate courts construing it, have been peculiarly benevolent and encouraging to the trial courts in the matter of giving such courts a broad discretion in passing upon the weight of the evidence in their consideration of motions for a new trial. The statute is definitely expressive of a few phases of the court's inherent powers, and our own rulings upon it are so sanctified by age and uniformity as to have become almost elementary. Regardless of the seeming weight of the evidence opposed to the action of the court *nisi* in setting aside a verdict of a jury on this ground, we do not interfere so long as there is any substantial evidence to bolster up the trial court's action. It is only when, had the verdict been the other way about, we would not for lack of supporting evidence have permitted it to stand, that we interfere with the trial court's discretion."

In the recent case of City of St. Louis v. Franklin et al., 324 Mo. 1212, 26 S. W. (2d) 954, the trial court granted a new trial on the ground that the award was inadequate. In disposing of that case on appeal we said:

"Granting a new trial on the ground assigned is equivalent to saying that in the mind of the trial judge the verdict is contrary to the weight of the evidence. We have held consistently that a trial judge, in sustaining a motion for new trial on that ground, has wide discretion with which we will not interefere unless it is manifestly abused. In passing upon it we cannot substitute our judgment for the judgment of the trial court in weighing evidence upon which

he based that ruling. [City of St. Louis v. Worthington (Mo. Sup.), 19 S. W. (2d) 1066; Devine v. St. Louis, 257 Mo. 470, 475, 476, 165 S. W. 1014, 51 L. R. A. (N. S.) 860.] In view of that principle of law we may briefly state the evidence in this case.''

In Guthrie v. Gillespie, 319 Mo. 1137, 1146, 6 S. W. (2d) 886, the trial court set aside a verdict in favor of plaintiff as being against the weight of the evidence. In approving such action, this court said:

''I. There was at least some substantial evidence to support the circuit court's order, and that is as far as this court will inquire. It is fundamental that appellate courts do not pass on the weight of the evidence in reviewing the action of trial courts on motions for a new trial (State ex rel. A., T. & S. F. Ry. Co. v. Ellison et al., 268 Mo. 225, 231, 186 S. W. 1075); and it has been said the scrutiny is less strict when a new trial has been granted than when it has been refused, and that in the former instance an appellate court will seldom interfere. [Lamb v. Feehan (Mo. Sup. Div. 1), 276 S. W. 71, 80; Stafford v. Ryan (Mo. Sup. Div. 2), 276 S. W. 636, 637.]''

Boiled down the rule may be thus stated: Where a new trial is sought on the ground that the verdict is against the weight of the evidence, in determining that question, the trial court may pass upon the weight of the evidence, and its action in granting or refusing to grant a new trial, will not be disturbed on appeal where the evidence pro and con is substantial and conflicting or where there is any substantial evidence to support the trial court's action. This is so because trial courts may and appellate courts may not pass upon the weight of evidence. City of St. Louis v. Worthington, 19 S. W. (2d) 1066, 1067; Sofian v. Douglas, 23 S. W. (2d) 126, 129. In view of the trial court's authority to pass on the weight of the evidence and our lack of authority to do so, the only question open for consideration in this court is whether or not there was any substantial evidence to support the trial court's action in granting a new trial. If so, its action must be affirmed. If not, such action should be reversed.

Plaintiff was injured in October, 1925, and this cause was tried in April, 1927. The evidence offered by plaintiff as to the character and extent of his injuries is fairly stated by him as follows:

''There was evidence tending to show that after the receipt of his injuries plaintiff was taken to the office of Drs. Lyttle and Coffee, where Dr. Lyttle treated him by taking X-rays and placing his leg in a plaster-of-paris bandage which remained on his leg for four weeks, during which time his leg pained him and he walked on crutches for four weeks and that he used a cane and it was about six months before he was able to walk on the leg at all; that Dr.

Blevins treated him thereafter; that at the time of the trial his ankle felt stiff and was swollen; that his leg was broken about four or five inches above the ankle and that it pains him where it was broken and his muscles cramp and wake him up at night; 'the whole leg is dead, like I sit down and the leg goes to sleep, it cramps;' that happens every night. Plaintiff further testified that his ankle was stiff at the present time and when he walked it felt dead and that caused him to limp all the time.

"Dr. Blevins testified on behalf of the plaintiff that he began to treat the plaintiff about the 28th day of December, 1925. That he found a fracture of the tibia on the right side and quite a stiffness and swelling of the right ankle, together with the muscular weakness of the right leg; that his treatment consisted of massage and rest, and he treated the plaintiff for two months and must have seen him at least twenty-five or thirty times. That the fracture had practically healed when he first saw the plaintiff; that he took no X-ray pictures because he could tell the condition of the leg without the aid of an X-ray by the callus formation. That when two bones come together they unite with a formation of callus tissue around the site of the fracture and that there is quite a bit of callus. That he measured both plaintiff's legs and found at least three inches difference in circumference, the right leg being the larger by reason of the callus at the point of fracture. That the reasonable value of his services was $65.

"On cross-examination of this witness the plaintiff was brought before the jury and his leg shown to the jury, and the doctor said that at that time he could not tell how much larger the plaintiff's right leg was at the place of fracture, but there was a difference in the size of the leg at that place. That the fracture extended about one inch and a half and he considered it from the callus there a comminuted fracture.

"On redirect examination the witness testified that when the plaintiff first came to see him the plaintiff's leg was very much larger than it is now. He used an electric vibrator and violet rays on it, and it seemed to take it down quite a bit, that is, the soft parts of the leg were affected by the treatment. That the condition as to the callus and stiffness of the ankle he considered permanent.

"Dr. F. G. Pernoud, for plaintiff, stated he made an examination of plaintiff on December 20, 1926, and also the morning of the trial, and found that there was an irregularity in the right tibia or shin bone about six inches above the right ankle, having the characteristics of an old fracture with some bowing of the shin bone with the bow forward. There is considerable callus at this point. There is limitation, that is, the inability to move well, the right ankle joint, particularly in bending the foot in an upward

direction, and some limitation in his attempt to straighten the foot out, bending the foot down at the ankle. There was some inflammation about the site of the irregularity to the lower part of the right shin bone, the right ankle and foot were swollen. That in his opinion the partial numbness or going to sleep condition which plaintiff complains of is a result, an ultimate result of the fracture, that is, the healing process of the fracture. With a large amount of callus which is newly formed bone about this point, six inches above the ankle, this lump in the bone extends all the way around the shin bone in the manner very similar in the way plumbers wipe a pipe; this increase in the bony structure at this point causes pressure against the nerves, blood vessels and muscles, which would give him the symptoms. That he has an impairment of motion in the right ankle and walks with a limp; otherwise there was no limitation of motion about the knee joint or hip joint. That it was his opinion that plaintiff limps as a result of a natural demand on the part of the body to relieve the injured leg as much as possible of weight; that is what limping is; it is the throwing or shifting of the body weight from one leg to another. That there is a secondary or ultimate cause, or the limitation of the motion in the ankle joint is a secondary result of the fracture. The mechanics of the leg are interfered with and unquestionably plaintiff received a sufficient amount of violence to cause a fracture of the shin bone. Because of the closeness of the ankle joint it also suffered violence. He has that condition now. It is my judgment that he has made as much repair as he is going to make and the conditions as I have described them are probably permanent. I say they are permanent. That he could not tell from the condition of the leg now whether the fracture was comminuted, compound or simple fracture, that there was an extra amount of callus present. At the point of fracture the leader, the tendon of the muscles, operate over the bone and in the muscles themselves. That unquestionably there was some injury to the soft tissues, muscles and tendons at the time of the fracture, the amount of which he was unable to tell.''

The evidence offered by defendant contradicted that given by plaintiff and was to the effect that plaintiff was not permanently injured, but on the contrary had made a complete and perfect recovery.

In determining whether or not a new trial should have been granted, the trial court was authorized to and did pass on the weight of the evidence. In doing so, evidently that court believed plaintiff's evidence and concluded that the verdict was substantially less than it ought to have been under the evidence. We can determine whether or not there was any substantial evidence to support the trial court's order granting a new trial, but that is

as far as we are authorized to go. In view of plaintiff's evidence which tends to show that he was permanently injured we cannot say, as a matter of law, that there was no substantial evidence to support the trial court's action in granting a new trial. On the other hand, if the trial court had approved the verdict and refused to grant a new trial, we would have affirmed such action, because defendant's evidence was substantial and tended to support the verdict. In other words, plaintiff's evidence was substantial and sufficient to justify the trial court's action in granting a new trial. Defendant's evidence was substantial and would have justified the court in refusing to grant a new trial. The trial court had a right to weigh this evidence. Having done so, and having taken plaintiff's view of the case and granted a new trial, we are not authorized to disturb that action because it was supported by substantial evidence and because we are not authorized to pass on the weight of the evidence. [Haven v. Missouri Ry. Co., 155 Mo. 216, 230, 55 S. W. 1035.] There are cases in which this court would be authorized and justified in reversing the order of the trial court in granting or refusing to grant a new trial on the ground that the verdict was against the weight of the evidence. For example see Grodsky v. Consolidated Bag Co., 26 S. W. (2d) 618. But the instant case does fall within that class of cases. Where, as in this case, the evidence pro and con as to the character and extent of the injury is conflicting and the record contains any substantial evidence to support the trial court's order granting a new trial we have steadfastly refused to disturb such ruling.

Appellant cites Fischer v. St. Louis, 189 Mo. 567, 579, 581, 88 S. W. 82; Pritchard v. Hewitt, 91 Mo. 547, 550, 4 S. W. 437; Cochran v. Wilson, 287 Mo. 210, 229, 230, 229 S. W. 1050; Sullivan v. Wilson, 283 S. W. 743, 744, 745; Haven v. Mo. Ry. Co., 155 Mo. 216, 55 S. W. 1035; Weinberg v. Street Ry. Co., 139 Mo. 286, 40 S. W. 882; Dowd v. Air Brake Co., 132 Mo. 579, 34 S. W. 493, in support of the contention that the trial court erred in granting a new trial. We have given these cases due and careful consideration and find that none of them runs counter to the conclusion we have reached.

The second reason assigned for granting a new trial was that error was committed in giving defendant's instruction number seven. The instruction reads:

"The court instructs the jury that no evidence has been offered before you in this case that any insurance company is interested in the defense or outcome of this lawsuit."

The question of insurance was not an issue in the case, yet, plaintiff's counsel on cross-examination of defendant's witnesses made a persistent effort by indirection to inform the jury that an insurance company was interested in the result of the trial. De-

fendant's attempt to inject the question of insurance into the case as well as the instruction given by the court concerning that question were both improper and neither should receive the approval of this court. But since plaintiff invited the giving of the instruction by attempting to inject a false issue into the case, he is not in a position to claim that he was harmed because the court instructed the jury that there was no evidence of such false issue.

There was substantial evidence to support the trial court's order granting a new trial on the ground that the verdict was against the weight of the evidence. For that reason the judgment should be and is affirmed. All concur.