[1] Plaintiff-appellant seeks recovery of damages for injuries alleged to have been received by her on July 30, 1945, when she stepped on a lid or cover to a sewer manhole in a public street in the City of Overland, St. Louis County, Missouri, and said lid or cover tilted or turned and caused her to fall and injure her left leg.
[2] The trial was before the judge and a jury, and resulted in a verdict and judgment in plaintiff's favor for $4,500. Thereafter the trial court sustained defendant's motion for a new trial, and in compliance with Section 115, Civil Code of Missouri, Mo.R.S.A. § 847.115, specified of record that the grounds on which the new trial was granted were specifications numbered 7 and 9 of the motion for a new trial, which are as follows:
[3] "7. The court erred, at the close of all the evidence in the case, in overruling and in failing to sustain defendant's written motion wherein it requested the court to direct a verdict in its favor, because under the law and the evidence, plaintiff was not entitled to recover against the defendant.
[4] "9. The amount of the verdict of the jury is excessive and shows a wanton disregard of the evidence and the law and shows bias and prejudice on the part of the jury against the defendant and in favor of the plaintiff."
[5] Woodson Road is one of the main thoroughfares of the defendant city and is heavily traveled. It is a twenty-foot concrete street with a ten or twelve foot shoulder on each side. The sewer involved is located about half way between the sidewalk and the concrete portion of the street in front of 2612 Woodson Road, the address of the Record News, a local newspaper and printing shop. The lid of the sewer is a circular iron cover, about fourteen inches in diameter; it is about one-half inch thick, with one inch slots, and weighs about twenty pounds.
[6] Plaintiff, with two little children, started across Woodson Road in front of the Record News. She stepped on the sewer cover which she says flew out and her left leg went down into the sewer up to her knee, causing the injuries of which she complains. The evidence applicable to the questions presented on this appeal will be referred to in the course of the opinion.
[7] At the threshold we are met with the hypothesis that the order of the trial court sustaining the motion for a new trial is presumptively correct. It is the settled law that a trial court has a wide discretion in passing on a motion for new trial, and where such a motion is sustained the appellate court will be liberal in upholding the trial court's action. Castorina v. Herrmann, 340 Mo. 1026, 104 S.W.2d 297; Reichmuth v. Adler, 348 Mo. 812, 155 S.W.2d 181; Zesch v. Abrasive Co. of Philadelphia, 353 Mo. 558, 183 S.W.2d 140, 156 A.L.R. 469; Schreiner v. City of St. Louis, Mo.App., 203 S.W.2d 678.
[8] Specification 7 of defendant's motion for a new trial was based on the contention of defendant that the evidence failed to show either actual or constructive notice to the City of any defect in the sewer cover, if in fact the same was defective. It is no doubt the settled law of this State that before a city may be held liable for damages on account of an injury sustained by a pedestrian because of a defective and unsafe condition in a sidewalk or street, the plaintiff must show not only a defective and unsafe condition, but must go further and show actual knowledge on the part of the City of such defective and unsafe condition, or show that such defective and unsafe condition had existed for such a length of time and under such state of facts as to justify the inference that the City officers knew, or should have known thereof, in the exercise of ordinary care, and have remedied the same.
[9] There was no direct evidence in this case of knowledge on the part of the City that the sewer hold cover was loose and in a defective or unsafe condition. But such fact is not required to be proved by direct evidence; it may be shown by facts and circumstances from which a reasonable inference may be drawn that the City officers knew, or that in the exercise of ordinary care would have known, of such condition. There was evidence of that nature produced *Page 592 
by plaintiff. The case was tried in November, 1948, over three years after the plaintiff's accident and naturally the recollection of witnesses as to dates surrounding the time of the accident was somewhat hazy. Plaintiff's witness Howard M. Powers, who conducted the Record News office, had observed in the fall of 1944 that this particular sewer cover was loose, and when an automobile would pass over it he could hear the cover pop up and down. Powers reported this condition to the City officers, and he says it was thereafter repaired. But plaintiff's husband testified that he examined the place the next day after his wife's injuries, and found the cover was loose and he could rock the lid back and forth, and it did not fit tight.
[10] The inference could reasonably be drawn from the testimony of these two witnesses that the sewer cover was defective in the fall of 1944 and the City did repair work, but that such repair work did not remedy the evil. This would, of course, be giving to plaintiff the most favorable view of the evidence, as both sides concede must be done when the trial court is considering a motion for a directed verdict at the close of all of the evidence.
[11] We do not think the trial court did commit error in refusing to direct a verdict for the defendant. And, when the trial court thereafter sustained defendant's motion for a new trial, we do not think it meant to say that there was no substantial evidence of notice. If that had been the trial court's intention, it would not have granted a new trial, but would have directed a verdict for defendant as authorized by Section 113, Civil Code of Missouri, Mo. R.S.A. § 847.113. And in fact the defendant did not ask in its motion for a new trial to have judgment in accordance with its motion for a directed verdict, as it would have likely done under the authority of Section 113, Civil Code of Missouri, if it had believed that there was no evidence of notice. All defendant sought was a new trial. The theory of the defendant and of the trial court must have been that the greater weight of the evidence was that the City did not have notice, and, of course, if that was the theory on which the new trial was granted, this court must uphold the action of the trial court, because we would have no right to weigh the conflicting evidence. Schreiner v. City of St. Louis, supra.
[12] Not only so, but the trial court went further and gave as a further reason for granting a new trial specification 9 of the motion, which was that the verdict was excessive. This specification went further than the ordinary specification that the verdict is excessive. It alleged that the verdict "shows a wanton disregard of the evidence and the law and shows bias and prejudice on the part of the jury against the defendant and in favor of the plaintiff." It was said by this court in the case of Aut v. St. Louis Public Service Co., 238 Mo.App. 1136, 194 S.W.2d 753, 757, that the granting of a new trial on the ground that the verdict is excessive is equivalent to the granting of a new trial on the ground that the verdict is against the weight of the evidence. The Supreme Court has so stated the law. Stegner v. Missouri-Kansas-Texas R. Co., 333 Mo. 1182, 64 S.W.2d 691; Hunt v. Gus Gillerman Iron Metal Co., 327 Mo. 887, 39 S.W.2d 369. Section 115, Civil Code of Missouri, expressly gives the trial court authority to grant a new trial on the ground that the verdict is against the weight of the evidence. In the case of City of St. Louis v. Franklin, 324 Mo. 1212, 26 S.W.2d 954, loc. cit. 955, the Supreme Court said, "Granting a new trial on the ground assigned is equivalent to saying that in the mind of the trial judge the verdict is contrary to the weight of the evidence. We have held consistently that a trial judge, in sustaining a motion for new trial on that ground, has wide discretion with which we will not interfere unless it is manifestly abused. In passing upon it we cannot substitute our judgment for the judgment of the trial court in weighing evidence upon which he based that ruling."
[13] Can it be said that in this case the trial court manifestly abused its discretion? We think not. Briefly stated, the evidence as to plaintiff's injuries, as stated by her and her husband, was that she was confined to her bed for eight months and unable to do any substantial work for one *Page 593 
year after the accident, and at the time of the trial still had pain, and that a water pocket had developed in her knee joint. But as opposed to this evidence was the evidence that although her leg below the knee was bruised, no bone was broken and the skin was not broken, and, of course, no bleeding whatever. A blood clot formed on her ankle, called a hematoma, and that was due to varicose veins; it was about the size of a horse chestnut, according to Dr. Hyland who attended her, and it was finally absorbed without an operation. The doctor said the hematoma should not have affected the use of her leg.
[14] If we had a right to weigh the evidence we might differ with the trial court as to the verdict being excessive but certainly when all of the evidence is considered, we cannot convict the trial court of having manifestly abused its discretion in weighing the evidence.
[15] The judgment of the circuit court should be affirmed and the cause remanded for a new trial. It is so ordered.
[16] ANDERSON, P. J., concurs in result.
[17] McCULLEN, J., concurs.